(No. 642—Claimant awarded $200.00.)

William B. Sinclair, Claimant, *vs.* State of Illinois, Respondent.

*Opinion filed April 16, 1925.*

Respondeat superior—*state not liable for torts of inmates of its institutions.* The State is not liable for the torts or acts of inmates of its institutions.

Social justice and equity—*award may be made.* The court may upon grounds of equity and social justice enter an award in favor of claimant although no legal liability exists against the State.

Charles C. Ellison, for claimant.

Edward J. Brundage, Attorney General; George C. Dixon, Assistant Attorney General, for respondent.

Mr. Justice Phillips delivered the opinion of the court:

This is an action brought by William B. Sinclair of Alton, Illinois, to recover damages for damage and destruction of personal property of claimant by inmates of the State Insane Asylum at Alton, Illinois, in 1922. The evidence is conflicting as to the amount of damage inflicted, and uncontradicted as to the remainder of facts related by claimant in his declaration and supported by his deposition, taken by stipulation by counsel of the parties to the suit.

The facts stated in claimant's declaration and the evidence are substantially as follows: The claimant operated a farm about one-half mile west of Alton Hospital for Insane in June, 1922, and prior to and subsequent to that date. He, claimant, was the owner of one horse, for which he paid $150.00 some time prior thereto, and a one-horse wagon or shay, which was valued at $15.00. He was also engaged in raising fancy, thoroughbred Rhode Island Red chickens, which valued at about $4.00 each. Some of them were capons, the rest breeders.

On June 22 of that year an inmate, or inmates, of said institution slipped away from the guards and went to the house of claimant practically in a nude condition, having a few strips of ribbons or rags tied about him, and then and there began the destruction of the personal property of claimant, in claimant's absence. Claimant was called to the house and found that about 106 of his Rhode Island Reds had been beaten up, crushed and killed and some of them put in several sacks, and great quantities of feathers at different points on

the premises. The insane inmate had hitched up the farmer's (claimant's) horse to the wagon in question, attacked him or frightened him, causing him to run away with the "shay" attached. After the horse ran some distance, he landed into a ditch with the wagon. The horse's jaw was broken, his back hurt, so that the horse always walked unsteady and wabbly thereafter, and he later sold the horse for about $73.00, and the horse soon died thereafter; but as to whether the death of the animal was caused by the injury received in the "dump heap" in the ditch when the horse and shay went into the ditch, is not in evidence in the case.

Dr. Trovillion, the superintendent of the said insane asylum, and guards came up after the aforesaid happenings and captured the escaped inmate who had wrought the destruction and damage aforesaid, and took him back to within the confines of the asylum. It was then and prior to this the custom and practice of said institution to allow the inmates "non-restraint," so-called by the prison authorities, but kept them guarded. Dr. Trovillion could not estimate the loss of fowls at over two dozen, and in this he was corroborated by other witnesses. He gave it as his opinion that the old wagon was at time of the wreck practically worthless. The veterinarian stated that the horse would fully recover. It seems to us that the claimant could have easily produced the evidence of others as to value of the fowls, horse and wagon, but did not. It should have been done. But the evidence of Dr. Trovillion and others in part corroborate the evidence of claimant. As the evidence is conflicting, it leaves it up to the court to make a rough guess at the real amount of damage sustained on the occasion.

In this unfortunate matter, claimant is certainly without fault. The practice of "non-restraint" in the management of the inmates of any state asylum for the insane should cause the State to exercise a high degree of care and watchfulness in the care of the inmates. Whether the State was exercising such care at the time of the commission of this act causing the claimant to lose his property is not in evidence.

It is not clear in the mind of the court, from the conflicting evidence, whether claimant lost 106 chickens, or two dozen only. No evidence is given to show the value of the horse and wagon before they were damaged. While, as a matter of law, the State is not liable for damages committed by an

insane inmate of the State's asylum, yet under the particular circumstances surrounding this case, social justice, equity and good conscience impel us to award the claimant something for the loss of his property. In the analysis of the conflicting evidence we have concluded to and do hereby find in favor of claimant and award him $200.00.